IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| ISAAC DANIELS,<br><br>    Plaintiff,<br><br>v.<br><br>METROPOLITAN LIFE INSURANCE<br>COMPANY, a/k/a Metlife Disability,<br><br>    Defendant. | ) <br>) <br>) <br>) <br>) <br>) **Civil Action No. 17-1335-CFC**<br>) Court of Common Pleas of the State of<br>) Delaware in and for New Castle County<br>) Civ.A.No. CPU4-17-003392<br>) <br>) |

## **MEMORANDUM OPINION**

---

Isaac Daniels, Middletown, Delaware; Pro Se Plaintiff.

David Phillip Primack, Esquire, and Randi F. Knepper, Esquire, McElroy, Deutsch, Mulvaney & Carpenter, LLP, Wilmington, Delaware; Counsel for Defendant.

March 25, 2019
Wilmington, Delaware

CONNOLLY, U.S. District Judge:

Defendant Metropolitan Life Insurance Company, a/k/a Metlife Disability ("Defendant") filed a notice of removal on September 21, 2017, of *Daniels v. Metlife Disability*, Delaware State Court Case No. CPU4-17-003392, filed in the Court of Common Pleas for the State of Delaware in and for New Castle County. (D.I. 1) Plaintiff Isaac Daniels ("Plaintiff"), who appears *pro se*, raises a claim pursuant to the Employment Retirement Income and Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§ 1001-1461. (*Id.*) Plaintiff seeks recovery of short-term disability ("STD") benefits allegedly due him. (D.I. 1-1) Pending before the Court are the parties' cross-motions for summary judgment. (D.I. 9, 13) The matters have been fully briefed.

## I. BACKGROUND

The Complaint alleges that Defendant "simply denied" Plaintiff's disability claim filed on May 16, 2017 by "gathering medical information which they claim did not substantiate [his] disability." (D.I. 1-1 at 5) The Complaint alleges that Defendant approved disability claims on four to five prior occasions requiring the same or less medical information and taking less time to do so. (*Id.*) Plaintiff seeks disability in the sum of $12,000. (*Id.*)

### A. Plan Details

Plaintiff, an associate loan and process analysis for Citi, Inc. ("Citi") was a participant in the Citi Disability Plan (the "Plan"). (D.I. 3) He submitted a claim for disability benefits for a disability alleged to have begun on May 16, 2017. (*Id.*) Under the Plan, Defendant is Citi's disability claims administrator. (D.I. 11 at 279). "The claims administrator has the discretion and authority to render benefit determinations in

1

a manner consistent with the terms and conditions of its respective plan, namely those provisions of the Plan documents that apply to the participant and are administered by that particular claims administrator." (*Id.* at 342) Defendant, "as the fiduciary, is responsible for adjudicating claims for benefits under the Disability Plan and for deciding any appeals of denied claims." (*Id.* at 284)

> The Claims Administrator shall have the authority, in its discretion, to interpret the terms of the Disability Plan, to decide questions of eligibility for coverage or benefits under the Disability Plan, and to make any related findings of fact. All decisions made by the Claims Administrator shall be final and binding on participants and beneficiaries to the fullest extent permitted by law.

(*Id.*)

> The Plan provides that STD benefits are payable
>
> > if you incur a total disability while actively at work. "Actively at work" means that you are regularly scheduled to work in the office or at home. You must be able to perform all of the activities of your job. A "total disability" is defined as a serious health condition, pregnancy, or injury that results in your inability to perform the essential duties of your regular occupation for more than seven consecutive calendar days. If you remain totally disabled and are unable to work on the eighth calendar day, STD benefits — if approved — will begin on the eighth day of disability and will be paid retroactive to the first day of disability.
> >
> > To qualify for STD benefits, you must be receiving appropriate care and treatment on a continuing basis from a licensed health care provider. You are not considered to have a disability if your illness, injury or pregnancy prevents you from commuting to and from work only. If you are able to perform essential duties of your job from home or elsewhere, and are unable to commute to work, this limitation does not constitute a disability for benefit purposes. . . .

(D.I. 11 at 280). "STD benefits are paid from the general assets of [Citi]. STD coverage is provided by Citigroup; no employee contributions are required." (*Id.* at 341)

2

If a claim is denied, a claimant has the right to appeal the decision. (*Id.* at 285) During the appeal, the claimant has the right to review any documents that have a bearing on the appeal, including the documents that establish and control the Disability Plan. (*Id.* at 285) In addition, any medical or vocational experts consulted by the claims administrator will be identified and the claimant may also submit issues and comments the claimant believes might affect the outcome of the review. (*Id.*) In the event the appeal is denied, the claimant has the right to bring a legal action under Section 502(a) of ERISA. (*Id.* at 286)

### B.  Factual and Medical History

Plaintiff telephoned Defendant on May 16, 2017, told Defendant that he last worked on May 15, 2017, and that he was disabled as the result of mental distress, anxiety, and depression. (*Id.* at 834-37) On May 23, 2017, Defendant interviewed Plaintiff who advised that his job responsibilities included processing loans and that his primary treating physician was Dr. Zahid Aslam ("Dr. Aslam"). (*Id.* at 850) When Plaintiff spoke with Defendant's representative on May 26, 2017, he was asked why he was treating with an obstetrician, and Plaintiff responded that this physician had five to six locations and will treat anyone. (*Id.* at 853)

Plaintiff called Defendant on May 26, 2017, stated that he had taken 12 aspirin and was unsure if he was safe. (*Id.* at 854) Plaintiff was told to "hold" but he disconnected and subsequent calls went to voice mail. (*Id.*) At that point, Defendant telephoned the police who told Defendant that an officer and an ambulance were being sent to evaluate Plaintiff. (*Id.*) Plaintiff was taken to Christiana Care Health Services

where he was examined. (*Id.* at 731) Plaintiff denied suicidal ideation and was referred for a psychiatric evaluation upon release. (*Id.*)

On May 30, 2017, Defendant advised Plaintiff that his claim was closed as of May 16, 2017, because Plaintiff had failed to provide the required information in support of his disability claim as previously requested. (D.I. 7 at 76; D.I. 11 at 726) Plaintiff asked to appeal the claim and wrote "notes from medical will be sent." (D.I. 11 at 726) The record reflects that Plaintiff sought his medical records from health care providers (D.I. 11 at 862-866) and, thereafter, Defendant received records from Dr. Aslam (*id.* at 739-764), Christiana Care Health Services (D.I. 7 at 79-83; D.I. 11 at 727-738), and Elizabeth Hollandsworth, LPCMH ("Hollandsworth") (D.I. 7 at 84-92; D.I. 11 at 709-720).

On June 15, 2017, Defendant's psychiatric medical director reviewed the records. (*Id.* at 872-873) The medical director noted that Plaintiff's mental status examination findings were normal and there was no medical information regarding anxiety and depression other than the medications Plaintiff was taking. The medical director concluded that if Plaintiff's symptoms were genuine "they would warrant support for impairments as well as indicate need for more intensive psychiatric treatment, however this remains unclear." (*Id.* at 873)

On June 20, 2017, Defendant denied Plaintiff's claim for STD benefits, stating:

> Your claim was reviewed in its entirety. There was no objective clinical evidence received to support that you were unable to function at work due to your psychiatric condition, or your reported symptoms reached the severity of a disability. The medical documentation did not indicate the severity, duration or frequency of psychiatric symptoms, or how such symptoms could lead to debilitating functional impairments or limitations that would have prevented you from functioning at work due to the mental nervous conditions. The medical information did not contain incapacitating clinical observations, severe mental status findings, or other explicit

4

> evidence of psychiatric symptoms that are more reliably associated with impairment to support that you were unable to perform your job duties due to the psychiatric conditions.

(D.I. 7 at 77-78; D.I. 11 at 665-666) Plaintiff was advised that he could appeal the denial of his claim. (D.I. 7 at 78; D.I. 11 at 666)

In a June 20, 2017 e-mail to Defendant, Plaintiff questioned the validity of the medical records submitted by his physicians, Dr. Keith Sokoloff, D.O., CIME ("Dr. Sokoloff"), who was treating Plaintiff for anxiety and depression, and Dr. Aslam, and asserted that the records were "incomplete and missing information." (*Id.* at 656) On June 23, 2017, Defendant spoke with Plaintiff and explained to him the appeals process. (*Id.* at 885- 887).

In a MetLife Behavioral Health Form, dated June 23, 2017, Dr. Sokoloff diagnosed Plaintiff with "depressive disorder; major." (D.I. 7 at 92-95; D.I. 11 at 646-648, 892) On June 27, 2017, counsel for Plaintiff advised that Defendant needed to speak to two of Plaintiff's physicians — Dr. Aslam and Dr. Sokoloff — prior to making a final decision on Plaintiff's case. (*Id.* at 584) The letter went on to state that Dr. Aslam was unavailable for questioning "because he is currently facing criminal charges, and Dr. Sokoloff is non-responsive to Defendant's request for information, [and Plaintiff] is very concerned that the unavailability of these doctors is going to negatively impact his [] appeal." (*Id.*)

Richard E. Jackson, M.D. ("Dr. Jackson"), who is board certified in psychiatry, conducted an independent physician consultant review for Defendant. (*Id.* at 495-503, 895) Dr. Jackson telephoned Dr. Sokoloff's office on several occasions, but Dr. Sokoloff did not return the phone calls. (*Id.* at 498-499) Dr. Jackson reviewed all

medical records submitted and issued a report dated June 28, 2017. (*Id.* at 636-642)
He opined that the medical information did not support a functional limitation that would preclude Plaintiff's ability to work full-time, because:

> The claimant's healthcare provider described relatively normal observed mental status during the period, other than the claimant's numerous self-reported mood changes and other symptoms. The presence of a persistent and severely debilitating psychiatric condition would usually be accompanied by more significant observable mental status or behavioral abnormality. However, there is no report of suicidal intent, threats, or plans or of homicidal ideation or aggressive behavior. There is no convincing reports of hallucinations, delusions, severely disorganized or bizarre speech, thought process, appearance or behavior. There is no observed or measured description of any impairment or attention, concentration, memory or cognitive dysfunction. There is no report of observed panic attacks, or signs of any other debilitating anxiety disorder. There is no observed description of neurovegetative signs of a severe depressed disorder or an inability to perform personal hygiene or food preparation, to manage his finances or medications or to safely transport himself to appointments, without assistance or supervision.
>
> The claimant's treatment, as described, is also not commensurate with that of a more severe and persistent debilitating psychiatric condition. Appropriate care of such a condition would usually include evaluation and treatment by a psychiatrist, as well as frequent, such as weekly, psychotherapy sessions or consideration of more intense levels of care. Despite multiple recommendations by his treating providers, there is no evidence that the claimant was ever under the regular care of a psychiatrist during the period. This also supports that his condition was considered to be stable, or of relatively low severity during this period.

(*Id.* at 641-642)

On June 30, 2017, Defendant forwarded Dr. Jackson's report to Plaintiff's treatment providers for comment. (*See e.g., id.* at 617, 562) In addition, on June 30, 2017, Defendant asked Plaintiff to participate in an independent medical examination, and Plaintiff responded that "he has nothing to hide." (*Id.* at 901-903). However, on

6

July 6, 2017, Plaintiff informed Defendant that he would not attend an independent medical examination. (*Id.* at 915-918)

On June 30, 2017, Plaintiff submitted a June 14, 2017 medical note of Dr. Sokoloff and a MetLife disability appeal request and asked that they be added to his current appeal. (*Id.* at 594-596) On July 1, 2017, Plaintiff submitted his job description to Defendant. (*Id.* at 610-611) On July 19, 2017, Hollandsworth submitted additional office notes. (*Id.* at 510- 512) On July 12, 2017, Dr. Sokoloff sent a letter in response to the physician consultant review report, stated that Plaintiff reported a May 26, 2017 suicide attempt, disagreed with Dr. Jackson's opinion, and opined that Plaintiff should be evaluated by a psychiatrist who actually sees and examines him. (*Id.* at 533) Plaintiff, however, had refused to attend an independent medical evaluation. (*Id.* at 427) Plaintiff submitted medical records from Union Hospital for a July 13, 2017, emergency department visit for headaches, hypertension, and chest pains. (*Id.* at 525-527)

Dr. Jackson reviewed the additional medical records and, on July 19, 2017, issued an addendum report. (*Id.* at 501-503) Dr. Jackson opined that the additional medical records did not change his previous assessment of Plaintiff's functional capacity, and stated:

> While the claimant clearly expressed anger over recent stressors and perceived grievances, the new information does not convincingly support presence of any severe psychiatric disorder which would be accompanied by significant functional impairments, restrictions, or limitations, as of 5/16/2017, through the present. There continues to be no report of suicidal or homicidal ideation, actual or threatened self-injury or aggressive behavior. There is no report of hallucinations, delusions or other signs of psychosis. There is no detailed or measured description of any impairment of attention, concentration, memory or other cognitive ability. There is no

report of panic attacks, or signs of any other debilitating anxiety disorder. There is further description of non-work-related functional inabilities. There is no report of actual or recommended psychiatric treatment or any more intensive level of care. There is no report of observed adverse effects to prescribe medication. There is no record of ongoing evaluation of treatment by a psychiatrist.

(*Id.* at 503)

On July 31, 2017, Defendant advised Plaintiff that the appeal review of the denial of Plaintiff's claim for STD was complete. (*Id.* at 423) Defendant's correspondence referred to the applicable Plan language, Plaintiff's medical records and other information considered, and noted that Plaintiff refused to attend an independent medical examination. (*Id.* at 423-429) The letter stated:

> We acknowledge and consider your reports of your work related stress and depression. We have completed a review of our medical information in file and based on our review, which included your reported symptoms and your health care provider's opinions and recommendations as well as the assessments and opinions from the IPC [Independent Physician Consultant]. We have determined that the medical documentation contained in your file failed to provide clinical evidence to support psychiatric functional impairment that would have precluded you from performing your job duties as a loan processor, as of May 16, 2017. Based on our review, there was no evidence to support you were experiencing any incapacitating symptoms consistent with an inability to perform your job duties, such as evidence of psychiatric symptoms that are more reliably associated with impairment such as psychomotor abnormalities, mood lability, difficulties with reality testing, activities of daily living, etc. As such, you do not meet the Plan's definition of disability as of May 16, 2017. Therefore, in accordance with the Plan's definition of total disability, we find on appeal review, the review decision to deny your claim for STD benefits was appropriate and remains in effect.

(*Id.* at 428) Plaintiff was advised of his right to bring a civil action which he did when he filed his complaint in the Court of Common Pleas in and for New Castle County, Delaware on August 23, 2017. (D.I. 1; D.I. 11 at 428)

## II. LEGAL STANDARDS

### A. Summary Judgment

Under Rule 56(a) of the Federal Rules of Civil Procedure, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden of demonstrating the absence of a genuine issue of material fact. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 585-86 (1986). An assertion that a fact cannot be — or, alternatively, is — genuinely disputed must be supported either by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). If the moving party has carried its burden, the nonmovant must then "come forward with specific facts showing that there is a genuine issue for trial." *Matsushita*, 475 U.S. at 587 (internal quotation marks omitted). The Court will "draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita*, 475 U.S. at 586; *see also Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005) (stating party opposing summary judgment "must present more than just bare assertions, conclusory allegations or suspicions to show the existence of a genuine issue") (internal quotation marks omitted). The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" a factual dispute is genuine only where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986) (stating entry of summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial"). Thus, the "mere existence of a scintilla of evidence" in support of the nonmoving party's position is insufficient to defeat a motion for summary judgment; there must be "evidence on which the jury could reasonably find" for the nonmoving party. *Anderson*, 477 U.S. at 252. The same standards and burdens apply on cross-motions for summary judgment. *See Appelmans v. City of Philadelphia*, 826 F.2d 214, 216 (3d Cir. 1987).

**B.   ERISA**

Pursuant to ERISA, a plan participant or beneficiary is permitted to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights

under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1332(a)(1)(B). "[A] denial of benefits challenged under § 1332(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). Where such discretionary authority is provided, the Court reviews a benefits determination under an arbitrary and capricious standard. *See Doroshow v. Hartford Life & Accident Ins. Co.*, 574 F.3d 230, 233 (3d Cir. 2009); *Post v. Hartford Ins. Co.*, 501 F.3d 154, 160-62 (3d Cir. 2007). In such circumstance, the Court asks whether there exists "sufficient evidence for a reasonable person to agree with the decision," *Courson v. Bert Bell NFL Player Ret. Plan*, 214 F.3d 136, 142 (3d Cir. 2000), seeking to determine if the plan administrator abused its discretion in reaching its conclusion, *see Fisher v. Aetna Life Ins. Co.*, 890 F. Supp. 2d 473, 480-81 (D. Del. 2012); *Malin v. Metropolitan Life Ins. Co.*, 845 F. Supp. 2d 606, 611-12 (D. Del. 2012). Under this deferential standard of review, the court may overturn the administrator's decision only if it is "without reason, unsupported by substantial evidence or erroneous as a matter of law." *Abnathya v. Hoffinan-LaRoche, Inc.*, 2 F.3d 40, 45 (3d Cir. 1993) (internal citations omitted).

When the plan administrator is burdened by a conflict of interest, the Court will include that conflict as one of the many considerations informing its review. *See Metropolitan Life Ins. Co. v. Glenn*, 554 U.S. 105, 116-17 (2008). The Supreme Court has made clear that such a conflict exists where "the entity that administers the plan, such as an employer or an insurance company, both determines whether an employee

is eligible for benefits and pays benefits out of its own pocket." *Id.* at 108. "[A] conflict is merely one factor to be considered in evaluating whether [the] decision actually constituted an abuse of discretion." *Howley v. Mellon Fin. Corp.*, 625 F.3d 788, 793 (3d Cir. 2010).

## III. DISCUSSION

Defendant moves for summary judgment on the grounds that: (1) Plaintiff cannot meet his burden of demonstrating that Defendant's determination denying the claim for STD benefits was arbitrary and capricious; and (2) Plaintiff cannot meet his burden of demonstrating that he was totally disabled as defined by the Plan. (D.I. 10) Plaintiff moves for summary judgment on the grounds that (1) the denial of STD benefits was arbitrary, capricious, made in bad faith, not supported by substantial evidence, and was erroneous on questions of law; and (2) there was an unreasonable delay in the process of the claim. (D.I. 13)

### A. Arbitrary and Capricious Standard

Defendant has met its burden of proving that the arbitrary and capricious standard of review applies. *See Viera v. Life Ins. Co. of N. Am.*, 642 F.3d 407, 413 (3d Cir. 2011) (plan administrator bears the burden of proving that the arbitrary and capricious standard of review applies). "Plaintiff has the burden of proof that the plan administrator's decision to deny benefits is an arbitrary and capricious decision." *Brandeburg v. Corning Inc. Pension Plan For Hourly Employees*, 2006 WL 2136481, at *1 (W.D. Pa. 2006), *aff'd*, 243 F. App'x 671 (3d Cir. 2007).

The record reflects that Defendant is the claims administrator, but is not responsible for paying benefits. Therefore, the Court does not consider that conflict of

interest is at issue in determining whether Defendant's decision was arbitrary and capricious.

Plaintiff contends the decision was arbitrary and capricious because Defendant approved his prior disability claims. (*See* D.I. 13 at 1) He argues his disability was a recurring illness as evidenced by the other disability claims filed with Defendant for the same illness; all of them approved. (*See* D.I. 7 at Ex. A1; D.I. 13 at 1) Plaintiff contends that all prior claims were submitted by the same physicians and/or mental health specialists. Plaintiff posits that the record of the prior claim approvals for the same disability substantiates his position that the claim denied in May 2017 was unreasonable and there was no rational basis for denial. (D.I. 13)

In the absence of any meaningful evidence to support a change in position, an abrupt reversal in terminating benefits is cause for concern that weighs in favor of finding the denial of an award is arbitrary and capricious. *See e.g., Miller v. American Airlines, Inc.*, 632 F.3d 837, 848 (3d Cir. 2011). Here, Plaintiff provides documentation of approval for prior STD claims in 2012, 2014, 2016, and 2017. (*See* D.I. 7 at 1-73) However, the prior awards do not warrant a finding that denial of Plaintiff's most recent STD claim was arbitrary and capricious. (*See* D.I. 7 at 1-75)

Contrary to Plaintiff's assertions, the previous STD benefits awarded were not based upon records submitted by the same physicians and mental health providers. Only Dr. Aslam was involved in two of the four prior approved claims. Also, Plaintiff fails to mention that Defendant sought and obtained medical reviews, Plaintiff's medical providers (*i.e.*, Drs. Aslam and Sokoloff) did not communicate with Defendant, and Plaintiff refused to submit to an independent medical examination as requested by

Defendant. While the records reflect Defendant's concern that Plaintiff was seen by Dr. Aslam, an obstetrician-gynecologist[1], the record indicates that, nonetheless, Dr. Aslam's medical records were considered by consultant psychiatrist Dr. Jackson who described Plaintiff as "initially treated by Dr. Aslam, family medicine." (D.I. 11 at 499) Plaintiff's diagnoses in his previous STD claims and the most recent claim are essentially the same; however, given the disparity of evidence among the claims, the lack of documentation in the instant claim, and the various physicians, it cannot be said that the decision to deny STD benefits for the instant claim was arbitrary and capricious. In addition, as will be discussed, the substantial evidence does not support a finding to justify an award of STD benefits.

### B. Substantial Evidence

Defendant contends the determination that Plaintiff is not totally disabled as defined by the Plan is not arbitrary and capricious because it is supported by substantial evidence in the administrative record. Plaintiff contends that he and his medical providers provided more than sufficient medical evidence to support the approval of his STD claim. The burden is on Plaintiff to show that the denial of benefits was "'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Pinto v. Reliance Std. Life Ins. Co.*, 214 F.3d 377, 393 (3d Cir. 2000) (quoting *Abnathya*, 2 F.3d at 45).

---

[1] "Some OB-GYNs offer a wide range of general health services similar to [a] primary care doctor." *See* https://www.healthline.com/health/what-is-an-ob-gyn#obgyn (last visited March 15, 2019).

"ERISA plans need not afford special deference to the claimant's treating physician, and are under no 'discrete burden of explanation when they credit reliable evidence that conflicts with a treating physician's evaluation'". *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 834 (2003)). It is the Plan's duty to resolve factual disputes, and it is not an automatic abuse of discretion when the dispute is resolved in favor of the Plan. *Sollon v. Ohio Cas. Ins. Co.*, 396 F. Supp. 2d 560, 586 (W.D. Pa. 2005).

Here, Defendant considered all relevant diagnoses and acknowledged Plaintiff's work related stress and depression. *See Miller*, 632 F.3d at 853 ("an administrator's failure to address all relevant diagnoses . . . is a cause for concern that suggests the decision may have been arbitrary and capricious). In doing so, Defendant considered the records and opinions of Plaintiff's treating physicians. In addition, Defendant sought an independent medical evaluation, which Plaintiff refused to undergo.

Also, Defendant sought additional evidence from Plaintiff to support his impairment in light of the fact that Dr. Aslam was unavailable due to criminal charges he was facing,[2] and Dr. Sokoloff was unresponsive to Defendant's requests for information. As noted, Plaintiff refused to undergo an independent medical evaluation, but as additional medical records were provided, Defendant sought an addendum to the

---

[2] The Court takes judicial notice that Dr. Aslam was indicted on June 15, 2017, entered into a plea agreement with the United States on November 30, 2018, and is scheduled to be sentenced in this Court on May 22, 2019. *See United States v. Aslam*, Crim. No. 17-0050-RGA (D. Del.) at D.I. 3, 51, 53.

opinion of the consulting psychiatrist so that all possible medical documentation was considered.

Finally, Defendant was permitted to rely on the opinions of its medical consultants, both of whom are board certified psychiatrists. Defendant's reliance upon the medical consultants' opinions was reasonable. The consultants did not ignore Plaintiff's symptoms and impairments as reflected in the medical records. They considered the records and noted: the normal findings of mood and affect; that Plaintiff's healthcare providers described relatively normal observed mental status; that the presence of a persistent and severely debilitating psychiatric condition would usually be accompanied by more significant observable mental status or behavioral abnormalities; and that the records supported the conclusion that Plaintiff's condition was considered to be stable and of relatively lower severity during the period in question. (D.I. 11 at 636-642, 873)

In Dr. Jackson's addendum he found that the new information did not convincingly support the presence of any severe psychiatric disorder which would be accompanied by significant functional impairments, restrictions, or limitations as of May 16, 2017 through July 19, 2017. He stated there was: (1) no detailed or measured description of any impairment of attention, concentration, debilitating anxiety disorder, or further description of non-work related functional inabilities; (2) no report of actual or recommended psychiatric treatment in any more intensive level of care; (3) no report of observed adverse effects to prescribed medication; and (4) no record of ongoing evaluation or treatment by a psychiatrist. (*Id*. at 503) Defendant's decision to deny

Plaintiff's STD claim was based on those opinions and, thus, Defendant determined that Plaintiff did not meet the Plan's required definition of disability as of May 16, 2017.

Given the foregoing, the Court concludes that the administrative record was adequate to support Defendant's denial of Plaintiff's STD claim. Defendant's decision was not "without reasons unsupported by substantial evidence or erroneous as a matter of law." *Abnathya*, 2 F.3d at 45. Accordingly, the Court will grant Defendant's motion for summary judgment and will deny Plaintiff's motion for summary judgment.

## IV. CONCLUSION

For the reasons discussed above, the Court will: (1) grant Defendant's motion for summary judgment (D.I. 9);[3] and (2) deny Plaintiff's cross-motion for summary judgment (D.I. 13).

A separate order will be entered.

---

[3] Because summary judgment is appropriate on behalf of Defendant, the Court does not consider the other grounds for summary judgment raised and finds the issues moot.